595 P.2d 406
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David BAREFIELD,
Defendant-Appellant.**

No. 3807.

Court of Appeals of New Mexico.

April 24, 1979.
Writ of Certiorari Denied May 25, 1979.

James L. Porter, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of aggravated burglary, kidnapping, rape, two sodomies, and robbery while armed with a deadly weapon. These convictions, the subject of this appeal, are referred to hereinafter as Case 3. Only two of the issues listed in the docketing statement were briefed; other issues were abandoned because not briefed. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977). The two issues briefed concern: (1) defendant's right to a speedy trial; and (2) credit on defendant's sentence.

Defendant was committed to the penitentiary in 1966 for second degree murder. This is Case 1. He was paroled in 1973.

Defendant was indicted for armed robbery in March, 1974. This is Case 2. In June, 1974, he was found incompetent to stand trial in Case 2, and was committed to the State Hospital.

In August, 1974, defendant escaped from the State Hospital and committed the crimes involved in Case 3.

In September, 1974, defendant's parole in Case 1 was revoked; he was remanded to the penitentiary.

In October, 1974, defendant was indicted for the Case 3 crimes. In November, 1974, defendant was found incompetent to stand trial in Case 3, but was returned to the penitentiary, where he was then confined in connection with Case 1. Although found incompetent, he was returned to the penitentiary because the testimony indicated he was extremely dangerous, a possible homicide or suicide, had escaped from the State Hospital, and psychiatric treatment was available at the penitentiary.

In February, 1978, defendant was found competent to stand trial. He was tried and convicted, in Case 3, in April, 1978.

*Speedy Trial*

A Supreme Court order, entered in April, 1975, extended the time to try defendant pursuant to Rule of Crim.Proc. 37 "to six months from the time Respondent is declared competent to stand trial." Defendant was tried within this time period. Compliance with the Supreme Court order and with Rule of Crim.Proc. 37 is not an issue in the appeal.

Defendant's speedy trial claim is based on the delay by the State in seeking a redetermination of his competency. *State v. Santillanes*, 91 N.M. 721, 580 P.2d 489 (Ct.App.1978). The factual basis for this contention involves reports which stated defendant was competent to stand trial. References to some of these reports appear in the file in Case 2, rather than Case 3. Both

cases involve the same district attorney's office. We disagree with the State's contention that the prosecutor in Case 3 is not chargeable with knowledge of the reports in Case 2. *Chacon v. State*, 88 N.M. 198, 539 P.2d 218 (Ct.App.1975). Defendant seems to argue that the various reports were, in themselves, a determination that defendant was competent to stand trial. We disagree. Competency to stand trial is a matter to be determined either by the court or jury. Rule of Crim.Proc. 35(b); *State v. Tartaglia*, 80 N.M. 788, 461 P.2d 921 (Ct.App.1969).

Although the claim of denial of a speedy trial is a constitutional claim, see N.M. Const., art. II, § 14, the claim is based in part on a provision in § 31–9–1, N.M.S.A. 1978, which states:

> Defendants determined to be incompetent under this section shall have the question of their mental capacity to stand trial redetermined * * * whenever the medical authorities of the institution to which the defendant was committed or any medical authority appointed by the court, report to the court that, in their opinion, the defendant is mentally competent to stand trial.

Technically, § 31–9–1, supra, is not applicable. Defendant was not committed to a mental institution after the incompetency determination in Case 3 in November, 1974. Defendant had already been committed to the penitentiary in Case 1, and had been returned to the penitentiary for parole violation. In addition, defendant had also been committed to the State Hospital in Case 2. All the November, 1974 order of incompetency did was direct that defendant be returned to the penitentiary.

Although not technically applicable, § 31–9–1, supra, supports the speedy trial claim because the statute contemplates a redetermination of competency when medical authorities are of the view that a defendant is competent to be tried.

The reports indicate a competency to stand trial. The speedy trial claim is based on the State's delay in seeking a redetermination of competency. Accordingly, we consider the four factors involved in the question of denial of a speedy trial, and the balancing of those factors. *State v. Tafoya*, 91 N.M. 121, 570 P.2d 1148 (Ct.App.1977).

(a) Length of the Delay

When did the delay begin and when did it end? Defendant asserts the delay began in September, 1975 with a Clinic Psychological Report. We disagree. This report went only to the absence of a need for defendant to be hospitalized; it did not discuss competency. Testimony at the competency hearing supports defendant's claim that there were reports in January, 1976 which indicated defendant was competent to stand trial. We consider the delay period to have begun in January, 1976. By oral motion in late November, 1977, the State requested that defendant be examined on the question of competency to stand trial. The examination was conducted in December, 1977, a competency hearing was held in January, 1978, and the order, declaring defendant competent, was entered in February, 1978. Thus, delay ended in November, 1977. The delay period to be considered is from January, 1976 through November, 1977, a maximum of twenty-three months.

What happened during the twenty-three-month period?

Defendant refers to the January, 1976 reports as being from the "Psychological Services Unit" at the penitentiary. An April, 1976 motion by the prosecutor referred to the January, 1976 reports and requested a court-ordered psychiatric examination. This motion was granted in April, 1976; however, the examination was not held until September, 1976. The report of the examination states that defendant was competent to stand trial.

A competency hearing was scheduled in May, 1977. Because "the evaluation was done back in September [1976]," the hearing was postponed and another evaluation was ordered by the trial court. The context of the hearing indicates this was agreeable to the attorney who appeared for defendant. Apparently, the examination ordered in May, 1977 was not held.

In August, 1977, the trial court again ordered a psychiatric examination; we do not know who sought this examination, but the order was "approved" by counsel for the State and for the defendant. Testimony indicates the examination was conducted in September, 1977; the examiner was of the opinion that defendant was competent to stand trial.

Thereafter, the State's oral motion in November, 1977 for a competency examination.

### (b) Reason for the Delay

The trial court was of the view that part of the delay was due to change of counsel or the physical absence of counsel. We agree. The trial court ordered a psychiatric examination in April, 1976. The examination was in September, 1976; however, defense counsel Ronald T. Taylor moved and was permitted to withdraw in May, 1976. The public defender was appointed to represent defendant. At the competency hearing scheduled in May, 1977, which was postponed by agreement of counsel, attorney Teel appeared on behalf of defendant. Attorney Teel informed the trial court "this is John Walker's case, and John is in South America . . . ." Defense approval of the court-ordered examination in August, 1977 was "Woody Smith for John Walker." On November 9, 1977, defendant filed a motion to dismiss which recites: "Petitioner has on numerous occassions [sic] requested assistance from his Court Appointed Attorney but to no avail, therefore, this Motion is being filed Pro se." Attorney Bruce Kelly entered his appearance for defendant on December 2, 1977.

Part of the delay can also be attributed to defense counsel's agreement to postpone the competency hearing in May, 1977 in order to obtain another psychiatric evaluation.

### (c) Defendant's Assertion of the Right

Defendant first asserted his right to a speedy trial by his motion to dismiss filed November 9, 1977.

### (d) Prejudice to the Defendant

Defendant claims he was prejudiced by the length of time he was incarcerated. The record shows he was incarcerated in connection with his murder conviction.

Defendant asserts the delay prejudiced his "interest in maintaining his anxiety at minimum and protecting his psychological well-being." There is no evidence to support this claim; the competency reports in the file, to the extent they contribute anything, are adverse to this assertion.

Defendant contends his defense was impaired because, at trial, defendant "was unable to elicit testimony crucial to his defense because the memory of the . . . [victim] was greatly impaired." Defendant does not suggest what that testimony might have been. The victim's lack of memory would seem to be a benefit to defendant. Defendant presented a full defense, including insanity at the time of commission of the crimes.

### (e) The Balancing Process

■■ The above four factors are to be balanced in determining whether there was a denial of a speedy trial because of delay in determining defendant's competency. *State v. Tafoya*, supra. The twenty-three-month delay was presumptively prejudicial. *State v. Tafoya*, supra. Part of the delay is fairly attributable to defense counsel, not the State. Defendant never asserted his right to a speedy trial until November, 1977. Defendant has not shown prejudice.

Applying the balancing process, defendant was not denied his right to a speedy trial.

### Credit on Defendant's Sentence

Defendant contends the trial court erred in failing to give defendant credit on his sentence for presentence confinement. Section 31–20–12, N.M.S.A.1978; *State v. La Badie*, 87 N.M. 391, 534 P.2d 483 (Ct.App. 1975). From the number of days defendant asserts should be credited, we assume the claim is for credit for all confinement from the date in November, 1974, when he was

held to be incompetent to stand trial in Case 3, until September 13, 1978, the date sentence was imposed in Case 3.

Section 31–20–12, supra, provides for credit for presentence confinement against the sentence imposed upon conviction of the offense charged or a lesser included offense. If the confinement was not in connection with the offense charged, § 31–20–12, supra, does not authorize a credit. *State v. Brewton*, 83 N.M. 50, 487 P.2d 1355 (Ct.App. 1971).

■ Defendant's presentence confinement occurred because his parole in Case 1 had been revoked. To the extent defendant was confined in Case 1, he was not entitled to credit under § 31–20–12, supra. Anticipating this result, defendant contends his parole was improperly revoked in Case 1. The propriety of the parole revocation involves the parole board, which was not before the trial court in Case 3. Thus, the trial court, in Case 3, could not determine the propriety of the parole revocation in Case 1. *State v. Bambrough*, 81 N.M. 548, 469 P.2d 527 (Ct.App.1970).

■ We cannot, however, say that defendant was not confined in Case 3. After ruling that defendant was incompetent in Case 3, the trial court ordered defendant returned to the penitentiary because he was dangerous and had escaped from the State Hospital. This seems to indicate that in light of his incompetency, defendant would have been confined at the State Hospital, in Case 3, but for the fact that he was dangerous. The record being ambiguous, defendant may raise the issue of credit on his Case 3 sentences by appropriate motion. See *State v. Murray*, 81 N.M. 455, 468 P.2d 416 (Ct.App.1970). If defendant, in fact, was confined on Case 3 charges, he is entitled to credit for that presentence confinement even though he was also confined, at the same time, in Case 1. *Mancinone v. Warden, Connecticut State Prison*, 162 Conn. 430, 294 A.2d 564 (1972).

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.