893 P.2d 461

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Herta WITTGENSTEIN, Defendant– Appellant.**

No. 15230.

Court of Appeals of New Mexico.

Jan. 31, 1995.

Certiorari Denied March 14, 1995.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, NM, for plaintiff-appellee.

John H. Tull, Jr., Randall J. Cherry, Tull, Paternoster, Cherry & Hart, Santa Fe, NM, for defendant-appellant.

## OPINION

HARTZ, Judge.

Herta Wittgenstein (Defendant) appeals her convictions on one count of fraud over $2,500 and one count of attempting to evade taxes. The history of this prosecution may be unique. On July 31, 1986 Defendant was indicted on fifteen counts, including charges of unauthorized practice of medicine, fraud, and attempting to evade taxes. A few months later she was indicted on an addition-al three counts of fraud and attempted fraud. Defendant pleaded guilty on January 13, 1987 to one count of unauthorized practice of medicine and two counts of fraud, the other counts being dismissed as part of a plea agreement. She was sentenced on May 4, 1987 and promptly appealed. We affirmed her convictions in September 1987. In May 1988 Defendant petitioned the United States District Court for the District of New Mexico to set aside her guilty plea. The district court denied relief, but in November 1992 the United States Court of Appeals for the Tenth Circuit reversed and remanded for reconsid-eration. *Spitzweiser–Wittgenstein v. New-ton*, 978 F.2d 1195 (10th Cir.1992). On July 12, 1993 the federal district court issued an order setting aside Defendant's 1987 guilty plea and requiring that any trial on the charges be commenced within 90 days. The dismissed counts were reinstated and Defen-dant was tried on seven of the counts in the indictments against her. The jury convicted her on two counts, acquitted her on four, and was unable to reach a verdict on the remain-ing count.

On appeal Defendant contends that (1) the counts in the indictment upon which she was convicted were unconstitutionally vague and should have been quashed; (2) the trial judge should have granted her motion to recuse himself; (3) there was insufficient evidence to sustain the jury verdicts; (4) the trial judge erred in allowing irrelevant testimony of witness Roger Thompson; (5) defense counsel was denied adequate time to prepare for trial; (6) the trial judge should have granted her motion for a mistrial when a witness testified about her prior invalidated guilty plea; (7) the charges should have been dismissed with prejudice because of the death of witnesses during the time between her invalidated guilty plea and the trial; and (8) the trial judge erred in refusing to give her credit on her sentence for presentence confinement served pursuant to her invali-dated guilty plea. Most of the issues can be resolved summarily. We reject Defendant's first seven contentions and affirm the convic-tion. We agree, however, with her eighth contention and therefore remand to the dis-

trict court to award proper credit toward her sentence for her presentence confinement.

## I. ISSUES DECIDED SUMMARILY

■ Defendant contends that the two counts of the indictment upon which she was convicted did not describe her alleged misconduct with sufficient specificity to enable her to prepare a defense or to protect her against subsequent prosecution for the same offenses. *See State v. Naranjo,* 94 N.M. 407, 412, 611 P.2d 1101, 1106 (1980). This contention comes too late. In district court Defendant did not challenge the specificity of the indictment or request a statement of facts. Defendant's contention cannot be raised for the first time on appeal. *See State v. Altgilbers,* 109 N.M. 453, 467, 786 P.2d 680, 694 (Ct.App.1989), *cert. denied,* 109 N.M. 419, 785 P.2d 1038 (1990); *State v. Martin,* 94 N.M. 251, 253, 609 P.2d 333, 335 (Ct.App.), *cert. denied,* 94 N.M. 628, 614 P.2d 545 (1980).

■ Defendant's contention that the trial judge should have recused himself is predicated solely on comments by the judge made a few days before trial while conducting a hearing in another case. Defendant's brief does not explain why anything said by the judge would imply that he was not impartial. Our review of the judge's comments suggests that he was expressing sympathy rather than hostility. The judge denied having any bias against Defendant. We find no error in the district court's denial of the recusal motion. *See Purpura v. Purpura,* 115 N.M. 80, 83–84, 847 P.2d 314, 317–18 (Ct.App.), *cert. denied,* 115 N.M. 79, 847 P.2d 313 (1993).

■ Defendant devotes less than two pages of her brief in chief to her contention that there was insufficient evidence to sustain the verdicts against her. She ignores SCRA 1986, 12–213(A)(3) (Cum.Supp.1994), which requires that "[a] contention that a verdict ... is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing upon the proposition...." We are reluctant to rely solely on this rule to address Defendant's sufficiency-of-the-evidence contentions because a conviction not supported by the evidence constitutes fundamental error. *See*

*State v. Doe,* 92 N.M. 100, 102, 583 P.2d 464, 466 (1978). Nevertheless, the State's answer brief summarizes sufficient evidence to sustain the verdicts under the standard of review set forth in *State v. Apodaca,* 118 N.M. 762, 765–67, 887 P.2d 756, 759–61 (1994). Nothing in Defendant's brief in chief casts doubt on the State's summary, and Defendant has filed no reply brief. Under these circumstances we reject Defendant's contentions that the evidence was insufficient.

■ Defendant argues on appeal that witness Thompson was permitted to testify, over proper objection, "to irrelevant and prejudicial acts ascribed to Defendant." But her brief does not describe the testimony or identify the particulars that made it inadmissible. We refuse to speculate concerning Defendant's specific contentions on appeal, and therefore we will not reverse on this ground.

■ Defendant claims that her attorney did not have sufficient time to prepare for trial because he was appointed only three weeks before trial. Although framing her argument as a claim of denial of the right to a speedy trial, the proper formulation of her claim is that she was denied effective assistance of counsel. *See State v. Hernandez,* 115 N.M. 6, 13–18, 846 P.2d 312, 319–24 (1993); *State v. Brazeal,* 109 N.M. 752, 755–58, 790 P.2d 1033, 1036–39 (Ct.App.), *cert. denied,* 109 N.M. 631, 788 P.2d 931 (1990). Defendant fails to explain, however, why the circumstances of the case indicate that the three-week preparation time necessarily prejudiced the defense. *See Hernandez,* 115 N.M. at 14, 846 P.2d at 320; *Brazeal,* 109 N.M. at 756, 790 P.2d at 1037. Nor has Defendant indicated any way in which she suffered actual prejudice because of inadequate time for her counsel to prepare. We note that of the seven counts submitted to the jury, the jury acquitted Defendant of four and was unable to reach a verdict on a fifth. Thus, we find no basis for setting aside the verdicts on the ground that defense counsel lacked adequate time to prepare. *See Hernandez; Brazeal.*

## II. WITNESS'S REFERENCE TO PRIOR GUILTY PLEA

When asked by the prosecutor how long he had known Defendant, witness Willem Mal-

ten answered, "From the end of 1984 to the time she pled guilty to the previous charges." Malten then proceeded to discuss how he and Defendant had met and other aspects of their relationship. Defense counsel did not notice the reference to Defendant's plea. When the trial judge, out of the presence of the jury, brought the reference to the attention of defense counsel, defense counsel moved for a mistrial. Both the judge and the prosecutor responded that the jury had not appeared to react to Malten's statement. The judge denied the motion. Defense counsel did not request a cautionary instruction or any relief besides a mistrial.

█ On appeal Defendant contends: "The jury could only have concluded that Malten was discussing the instant charges because of the context of his testimony. The jury could not have drawn any conclusion other than that the guilty plea described was in reference to the instant proceeding."

The prejudice to Defendant is not as clear-cut as she contends on appeal. If defense counsel did not notice the remark, one cannot presume that the jurors did. Given that the prosecutor made no attempt to emphasize Malten's comment, the jurors may have assumed that the witness had meant to say "pled *not* guilty". Even if the jurors concluded that Defendant had pleaded guilty to some of the charges involved in this case, they may have inferred that she was a person willing to admit guilt and therefore must have had sound reasons for demanding a trial on the charges before them. In this regard we note that earlier in the trial Defendant herself (apparently against the advice of her attorney) had requested that she be allowed to notify the jury of her prior guilty plea.

█ We defer to the sound discretion of the trial judge in deciding whether to grant a mistrial. *See State v. Gibson,* 113 N.M. 547, 556, 828 P.2d 980, 989 (Ct.App.), *cert. denied,* 113 N.M. 524, 828 P.2d 957 (1992). We give particular weight to his observation that the jury did not react to Malten's comment. Defendant's failure to request a cautionary instruction also weighs against reversal, because a well-constructed instruction can often dissipate prejudice. *See id.* Some after-the-fact support for the

judge's decision can be found in the verdict reached by the jury: two verdicts of guilty, four verdicts of not guilty, and one indecision. This result is not one likely to have occurred if the sound judgment of the jurors had been overwhelmed by Malten's comment. We find no reversible error in the denial of Defendant's motion for a mistrial.

### III. LOSS OF WITNESSES BETWEEN ENTRY OF INVALID PLEA AND TRIAL—SPEEDY TRIAL CLAIM

█ Defendant was indicted on December 18, 1986 and arraigned shortly thereafter. Her trial was almost seven years later. The determination of whether delay has denied a defendant the constitutional right to a speedy trial, U.S. Const. amend. V; N.M. Const. art. II, § 14, requires balancing the " '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' " *United States v. Loud Hawk,* 474 U.S. 302, 313–14, 106 S.Ct. 648, 655, 88 L.Ed.2d 640 (1986) (quoting *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)). Ordinarily, in view of the length of the delay in this case we would want to examine the other factors with particular care to determine whether Defendant's constitutional right was violated. For example, with respect to prejudice, Defendant claims that key witnesses died during the period between her guilty plea and her trial.

The delay in this case, however, was of a type that requires a somewhat different approach than what is commonly employed in evaluating a claim of the denial of the right to a speedy trial. The delay of which Defendant complains was caused by judicial review initiated by Defendant. The opinion of the United States Supreme Court in *Loud Hawk* suggests that special considerations arise from this type of delay. We quote from the opinion at length:

> The remaining issue is how to weigh the delay occasioned by an interlocutory appeal when the defendant is subject to indictment or restraint. As we have recognized, the Sixth Amendment's guarantee of a speedy trial "is an important safeguard

to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). These safeguards may be as important to the accused when the delay is occasioned by an unduly long appellate process as when the delay is caused by a lapse between the initial arrest and the drawing of a proper indictment, [*Ewell,* 383 U.S. at 118–19, 86 S.Ct. at 775–76], or by continuances in the date of trial, *Barker v. Wingo,* 407 U.S. 514, 517–518, 92 S.Ct. at 2185–2187, 33 L.Ed.2d 101 (1972).

At the same time, there are important public interests in the process of appellate review. The assurance that motions to suppress evidence or to dismiss an indictment are correctly decided through orderly appellate review safeguards both the rights of defendants and the "rights of public justice." *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905)....

It is, of course, true that the interests served by appellate review may sometimes stand in opposition to the right to a speedy trial. But, as the Court observed in [*Ewell,* 383 U.S. at 121, 86 S.Ct. at 777]:

"It has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events.... [This rule] has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error.... These policies, so carefully preserved in this Court's interpretation given the Double Jeopardy Clause, would be seriously undercut by [an] interpretation given the Speedy Trial Clause [that raised a Sixth Amendment obstacle to retrial following successful attack on conviction]."

*Loud Hawk,* 474 U.S. at 312–13, 106 S.Ct. at 655. *Loud Hawk* involved appeals by both the prosecution and the defense. Addressing delays caused by defense appeals, the Court wrote:

In that limited class of cases where a pretrial appeal by the defendant is appropriate, [citation omitted] delays from such an appeal ordinarily will not weigh in favor of a defendant's speedy trial claims. A defendant with a meritorious appeal would bear the heavy burden of showing an unreasonable delay caused by the prosecution in that appeal, or a wholly unjustifiable delay by the appellate court. A defendant who resorts to an interlocutory appeal normally should not be able upon return to the district court to reap the reward of dismissal for failure to receive a speedy trial. As one Court of Appeals has noted in the context of a District Court's consideration of pretrial motions:

"Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon." *United States v. Auerbach,* 420 F.2d 921, 924 (CA5 1969), rehearing denied, 423 F.2d 676, cert. denied, 399 U.S. 905, 90 S.Ct. 2195, 26 L.Ed.2d 560 (1970).

*Id.* 474 U.S. at 316–17, 106 S.Ct. at 656–57.

The great bulk of the delay arising from judicial review in this case was not during appellate review (in the New Mexico courts), but on collateral review (in federal court). Nevertheless, the reasoning of *Loud Hawk* still applies. As we understand the thrust of that opinion, delay caused by judicial review (appellate or collateral) should not be considered under a speedy-trial claim until the defendant meets "the heavy burden of showing an unreasonable delay caused by the prosecution in that [review], or a wholly unjustifiable delay by the [reviewing] court." *Id.* at 316, 106 S.Ct. at 657.

Defendant has not met that burden here. Although the duration of the proceedings in federal court appears extraordinary, we have no evidence regarding how the matter progressed in federal court and Defendant

makes absolutely no claim of any improper or untoward delay in those proceedings. We do not even have a copy of Defendant's initial pleading in federal court, so we cannot determine if that petition raised the ground upon which relief was ultimately granted. Because it is appropriate to reject a speedy-trial claim predicated on the time expended on judicial review unless the defendant establishes unreasonable delay caused by the prosecution or unjustifiable delay by the reviewing court, we deny Defendant's speedy-trial claim.

## IV. CREDIT FOR TIME SERVED

█ Defendant was sentenced to a prison term of four and one-half years. She argues that her confinement pursuant to the guilty plea that was set aside in federal court should be credited toward her sentence. We agree.

NMSA 1978, Section 31–20–12 (Repl. Pamp.1994), states that "[a] person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." Our cases have held that when there is a causal relationship between the charge for which a defendant is ultimately sentenced and the defendant's presentence confinement, credit is authorized by this provision. In *State v. Ramzy*, 98 N.M. 436, 649 P.2d 504 (Ct.App. 1982), the defendant's appeal bond in one case (Case One) was revoked when he was arrested on a second offense (Case Two). The next day his bond was raised in Case Two to an amount that he could not post. After Defendant was convicted and sentenced in Case Two the trial court granted him credit for the time of confinement after bond was raised in Case Two. Holding that the trial court had properly granted credit, we wrote:

> In the case at bar the defendant was not confined when Case Two occurred. Case Two triggered and caused the revocation of the appeal bond in Case One. He was unable to meet the high bond required in Case Two. Defendant's incarceration and confinement for the period in question was undoubtedly partly, if not totally, caused by Case Two charges.

*Id.* at 438, 649 P.2d at 506. In *State v. Irvin*, 114 N.M. 597, 844 P.2d 847 (Ct.App.1992), we held that a defendant sentenced for a drug offense could receive credit for time served as the result of revocation of his parole on another offense when the revocation was predicated on the drug offense. *See also State v. Facteau*, 109 N.M. 748, 790 P.2d 1029 (1990); *State v. Orona*, 98 N.M. 668, 651 P.2d 1312 (Ct.App.1982); *State v. Page*, 100 N.M. 788, 676 P.2d 1353 (Ct.App.1984); *State v. Barefield*, 92 N.M. 768, 595 P.2d 406 (Ct. App.), *cert. denied* (May 25, 1979).

The State contends that Defendant is not entitled to credit toward her sentence for time served pursuant to the sentence on the invalidated guilty plea because the counts on which she was convicted at trial are different from the counts to which she had pleaded guilty. Some support for the State's position can be found in *State v. Miranda*, 108 N.M. 789, 779 P.2d 976 (Ct.App.), *cert. denied*, 108 N.M. 771, 779 P.2d 549 (1989). In that case the defendant had been arrested in Case 1 and incarcerated for more than a month. He was later arrested in Cases 2 and 3. He was found guilty in Case 2 and pleaded guilty in Case 3 as part of a plea bargain which resulted in the dismissal of Case 1. We held that the defendant was not entitled to credit for the time he was incarcerated immediately after his arrest on Case 1 because "this time related only to Case 1 for which he was never convicted or sentenced." *Id.* at 791, 779 P.2d at 978. We explained:

> In arguing for credit for confinement time spent on Case 1, defendant states that if it is denied, the prosecutor will be able to hold an accused for long periods of time on one charge, convict on other charges, then dismiss the one charge defendant was held on and effectively deny the accused credit. Our statute, however, does not permit credit on an unrelated charge. § 31–20–12. The determinative issue for presentence confinement credit is whether the basis for the confinement was actually related to the charge upon which the final conviction and sentence are

based. *State v. Page; State v. Ramzy.* Furthermore, in negotiating a plea bargain, both parties have their respective bargaining positions. Defendant could have insisted on entering a plea on Case 1, thus receiving credit for presentence confinement related to that case.

*Id.* at 794, 779 P.2d at 981.

*Miranda* may appear indistinguishable from the present case because both cases involve plea bargains in which charges were dismissed. But a closer examination reveals that the fact patterns of the two cases are materially different and consequently the same analysis yields different results. The question in *Miranda* was whether the time that the defendant was incarcerated on Case 1 could be attributed to the charges on which he was ultimately sentenced. The clear answer was no, because the charges in Cases 2 and 3 did not even exist at the time of that incarceration. As the *Miranda* court noted, if the defendant desired credit for the time served on Case 1, he could have insisted on structuring the plea agreement to include a guilty plea in Case 1.

The question here likewise is whether the counts on which Defendant was convicted by the jury were in part responsible for the prior incarceration pursuant to Defendant's invalidated guilty plea. The answer to this question is yes. Defendant's guilty plea was pursuant to a plea agreement. Although the charges on which Defendant was ultimately convicted were dismissed as part of the agreement, it is unrealistic to say that the dismissed charges had no causal relationship to the guilty plea and the sentence pursuant to that plea. Virtually every plea agreement involves a quid pro quo. The State forgoes potential convictions or sentences in return for the certainty of the agreed-upon conviction and accompanying sentencing potential. The charges that are dismissed serve as an inducement to the defendant to accept the agreement. The connection between the dismissed charges and the plea is particularly apparent with respect to the previously dismissed fraud count upon which Defendant was convicted. As part of her plea agreement Defendant was required to return a painting to the victim of that fraud even though the victim was not the victim in either of the fraud counts to which Defendant pleaded guilty.

Given the causal connection between the charges on which Defendant was convicted and the sentence pursuant to the plea agreement, we conclude that Defendant is entitled to credit for time served pursuant to the invalidated plea. We remand to the district court for the purpose of ordering that credit be recognized.

## V. CONCLUSION

For the above reasons we affirm Defendant's convictions but remand for an award of proper credit for pre-sentence confinement.

**IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.