IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2024-NMCA-025

Filing Date: June 1, 2023

No. A-1-CA-38256

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

VALEREY HERRERA,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
James Waylon Counts, District Court Judge

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

DUFFY, Judge.

{1}    A jury convicted Defendant Valerey Herrera of fraudulent use of a credit card and conspiracy to commit fraudulent use of a credit card after she was shown on video making a purchase using a credit card belonging to a local business. In total, eight other fraudulent transactions were made on the business credit cards over a five-day period. Defendant raises three issues on appeal: (1) the State presented insufficient evidence to support her conviction for conspiracy to commit fraudulent use of a credit card; (2) the district court erred in setting the amount of restitution; and (3) the district court erred in denying her presentence confinement credit for the period between sentencing in an

earlier case and sentencing in this case. We affirm Defendant's conviction for conspiracy regarding the transaction she made, but because the district court's order of restitution was based on the value of all nine transactions and not the single transaction for which Defendant was convicted, we reverse the district court's order of restitution and remand with instructions to recalculate the restitution amount. Finally, we affirm the district court's denial of presentence confinement credit because the time Defendant seeks was already counted toward a sentence imposed in a prior case and the facts of this case do not meet the narrow exception for dual credit.

**BACKGROUND**

**{2}** In September 2016, Ernesto Martinez—the president of Bar M Construction—discovered thousands of dollars' worth of unauthorized charges to the company's credit account with Home Depot. Bar M Construction had maintained this credit account for many years, but the company did not use physical credit cards to make purchases. Rather, Mr. Martinez preferred to notify Home Depot that he had authorized certain employees to charge the account directly at the Home Depot Contractors' Sales Desk.

**{3}** Bar M Construction would receive physical cards each time the company authorized a new employee to use the credit account, but Mr. Martinez would promptly destroy them. About thirty days prior to the unauthorized transactions, Mr. Martinez had removed one authorized user and added another—Susana Gutierrez. Mr. Martinez went to the Home Depot Contractors' Sales Desk to record the change. At that time, the company only had one other authorized user—Noe Martinez, the company foreman.

**{4}** During that same period, mail had repeatedly gone missing from the company mailbox. Mr. Martinez later told investigators that he believed someone had stolen the physical credit cards from the company mailbox and used them in the unauthorized transactions. Mr. Martinez also personally investigated the unauthorized transactions by reviewing receipts and video surveillance from Home Depot. A summary of those transactions follows here:

|  | Date &Time | Name on Credit Card | Total Amount Charged | Gift Cards | Job Identifier |
|---|---|---|---|---|---|
| **1.** | 9/12/16 8:16 p.m. | Susana Gutierrez | $788.76 | $500 | Bars Construction |
| **2.** | 9/13/16 12:46 p.m. | Susana Gutierrez | $2,052.88 | $670 | 6139247 |
| **3.** | 9/14/16 2:08 p.m. | Noe Martinez | $967.44 | | 789204896 |
| **4.** | 9/14/16 8:57 p.m. | Susana Gutierrez | $2,032.80 | $600 | Bars Construction |
| **5.** | 9/15/16 8:25 a.m. | Susana Gutierrez | $2,464.98 | $1,200 | 45469200 |

| | | | | | |
|---|---|---|---|---|---|
| 6. | 9/15/16 8:36 a.m. | Susana Gutierrez | $1,419.18 | $700 | 6139247 |
| 7. | 9/16/16 2:29 p.m. | Noe Martinez | $2,204.13 | $1,600 | Bars Construction |
| 8. | 9/16/16 6:20 p.m. | Noe Martinez | $1,972.50 | | 856375 |
| 9. | 9/16/16 6:44 p.m. | Noe Martinez | $1,165.45 | $1,100 | 856375 |
| | | **TOTALS:** | **$15,068.12** | **$6,370** | |

**{5}**     Mr. Martinez confirmed that while Susana Gutierrez and Noe Martinez's names appeared on the receipts, neither of the authorized users appeared in the surveillance footage. Mr. Martinez also observed that the transactions had been associated with job identifiers using *numbers* rather than the names of Bar M Construction sites, as was company custom. He further noted that the purchasers bought gift cards in seven of the nine transactions in question, but no Bar M Construction employee had ever purchased a gift card using the credit account. Indeed, the unusual gift card purchases caught the attention of an employee at the Home Depot Contractors' Sales Desk, who independently notified the Home Depot manager.

**{6}**     The Home Depot manager, in turn, reviewed the purchases and surveillance footage, called the police, and ultimately gave a statement to a detective. The Home Depot manager acknowledged that any person could have used the corporate credit cards in the store without presenting personal identification. After viewing the surveillance footage and receipts, the detective determined that a number of different people appeared in the videos making purchases. Defendant appeared only in the September 13, 2016 video that corresponded with the second of the nine unauthorized transactions.

**{7}**     The case went to trial in September 2018 and the jury convicted Defendant of fourth-degree fraudulent use of the Bar M Construction credit card (over $500) in violation of NMSA 1978, Section 30-16-33(A)(4) (2006), and conspiracy to commit fraudulent use of a credit card in violation of NMSA 1978, Section 30-28-2 (1979). In May 2019, Defendant was sentenced to serve a term of five-and-a-half years' incarceration consecutive to a sentence she had received in an earlier, unrelated case. During the sentencing hearing, Defendant requested presentence confinement credit for the period from September 2017, when she was sentenced in the earlier case, until May 2019, when she was sentenced in this case. The district court denied her request. In addition to her sentence, the district court ordered Defendant to pay restitution in the amount of $15,504.37 based on the total amount of the unauthorized charges. Defendant appeals her conviction for conspiracy, the amount of restitution ordered by the district court, and the denial of presentence confinement credit.

**DISCUSSION**

**I.     Conspiracy to Commit Fraudulent Use of a Credit Card**

**{8}** We first address Defendant's challenge to the sufficiency of the evidence supporting her conviction for conspiracy. She argues that the State (1) presented no evidence of an agreement, and (2) failed to present evidence tending to show that the fraudulent transactions were part of a single, grand conspiracy rather than a series of smaller conspiracies. When reviewing the sufficiency of the evidence, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (emphasis, internal quotation marks, and citation omitted).

**{9}** "A conspiracy is defined as a common design or agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means." *State v. Chavez*, 1983-NMSC-037, ¶ 10, 99 N.M. 609, 661 P.2d 887. "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes." *State v. Ross*, 1974-NMCA-028, ¶ 17, 86 N.M. 212, 521 P.2d 1161 (internal quotation marks and citation omitted).

**{10}** In this case, for the jury to find Defendant guilty of conspiracy to commit fraudulent use of a credit card without consent, the State had to prove:

> 1.      [D]efendant and another person by words or acts agreed together to commit fraudulent use of a credit card over $500;
>
> 2.      [D]efendant and the other person intended to commit fraudulent use of a credit card over $500;
>
> 3.      This happened in New Mexico on or between the 12th and 16th day of September 2016.

*See* UJI 14-2810 NMRA.

**{11}** Defendant's first argument is directed toward the first element of the offense. She maintains the State did not present direct or circumstantial evidence from which the jury could determine that an agreement was reached with another person, noting that "[t]he State did not present any evidence of communication between [Defendant] and any of the other people who apparently used the same card in the days before and after [Defendant]." The State, however, was not required to present evidence of *communications* in order to prove conspiracy. Our courts have long acknowledged that the "agreement need not be verbal, but may be shown to exist by acts which demonstrate that the alleged co-conspirator knew of and participated in the scheme." *State v. Trujillo*, 2002-NMSC-005, ¶ 62, 131 N.M. 709, 42 P.3d 814; *see also State v. Gallegos*, 2011-NMSC-027, ¶ 26, 149 N.M. 704, 254 P.3d 655 ("A conspiracy may be established by circumstantial evidence. Generally, the agreement is a matter of

inference from the facts and circumstances." (internal quotation marks and citation omitted)).

**{12}**    In this case, sufficient circumstantial evidence supported the jury's determination that Defendant agreed with at least one other person to commit fraudulent use of a credit card. At trial, the State admitted receipts for nine unauthorized transactions made over the course of five consecutive days. Of the nine transactions, five were made using a Bar M Construction credit card issued to Susana Gutierrez. A detective confirmed that Defendant appeared in surveillance footage on September 13, 2016, conducting the second of the five transactions on the Gutierrez credit card. The detective also testified that Defendant did not appear in the videos for any of the other transactions. During the transaction involving Defendant, she used "6139247" as the job identifier for the purchase. The State presented evidence showing that the person who made the last of the five transactions using the Gutierrez card also input the same seven-digit job identifier, "6139247."

**{13}**    From this evidence, a rational jury could reasonably infer that: (1) there was some level of agreement and coordination among the users of the Gutierrez card based on the use of the same job identifiers in multiple transactions; (2) Defendant must have received the Gutierrez card at some point shortly after the first purchase had been made with that card; (3) Defendant used the Gutierrez card to make an unauthorized purchase one day after it was used in the first transaction, and Defendant was the first person to use the seven-digit job identifier, "6139247"; (4) after using the Gutierrez card, Defendant gave the card to another person; (5) at some point either before or after Defendant made the unauthorized purchase, she communicated with someone else regarding the job identifier she used during her transaction; and (6) at least one other person used the Gutierrez card three more times in the next two days and one person used the same job identifier Defendant had used in the fifth and final transaction involving the Gutierrez card. Viewed in the light most favorable to the State, this evidence strongly suggests that Defendant by words or acts agreed with at least one other person to fraudulently use the Bar M Construction credit card. *See Gallegos*, 2011-NMSC-027, ¶ 26 ("The prosecutor need not prove that each defendant knew all the details, goals or other participants." (alteration, internal quotation marks, and citation omitted)).

**{14}**    Beyond Defendant's argument that the State failed to present evidence of an agreement, Defendant also argues that the State failed to show that "the unauthorized purchases were part of a single, grand conspiracy rather than a series of smaller conspiracies." We need not reach this argument because Defendant's conspiracy conviction appears to encompass only the single transaction she made on September 13, 2016, which totaled $2,052.88. In reviewing the judgment and sentence, Defendant was convicted of conspiracy to commit fourth-degree fraudulent use of a credit card without consent, contrary to Section 30-16-33(A)(4). The fourth-degree designation is significant because the Legislature specified different levels of punishment based on the value of the property obtained. *See* § 30-16-33(B)-(F). The fourth-degree level encompasses fraudulent transactions "when the value of the property . . . is over five

hundred dollars ($500) *but not more than two thousand five hundred dollars ($2,500)."* Section 30-16-33(D) (emphasis added). If the conspiracy included any or all of the other transactions, it would fall within the value range for *third-degree* fraudulent use of a credit card—over $2,500 but not more than $20,000. *See* § 30-16-33(E).

**{15}** With this information in mind, we note that the jury instructions in this case only asked the jury to determine whether Defendant intended to commit fraudulent use of a credit card over $500—the statutory minimum necessary to support the charge at the fourth-degree level. The jury was not asked to consider whether the object of the conspiracy met the minimum value necessary for the higher third-degree charge (over $2,500), nor was the jury instructed on finding that the conspiratorial agreement related to all nine fraudulent transactions. As a result, we have no finding, and therefore no basis to conclude from the jury's verdict, that the object of the conspiracy exceeded $2,500.

**{16}** Because the judgment and sentence reflects that Defendant was convicted at the fourth-degree level, and we lack a finding to establish that the object of the conspiracy crossed the threshold into a higher value range, we must conclude that the conspiracy charge did not include anything other than the single transaction Defendant was involved in. As we have discussed, the evidence was sufficient to support the jury's conviction on that charge.

## II. Restitution

**{17}** In light of the foregoing, we agree with Defendant that the restitution order requiring her to pay for all nine fraudulent transactions cannot stand. The victim restitution statute, NMSA 1978, Section 31-17-1(A) (2005), provides "that restitution be made by each violator of the Criminal Code [NMSA 1978, Section 30-1-1 (1963)] to the victims of [their] criminal activities." The term "criminal activities" in this statute refers to the crime for which there is a guilty verdict, and this Court has said that "[r]estitution must be limited by and directly related to those criminal activities." *State v. Madril*, 1987-NMCA-010, ¶¶ 5-6, 105 N.M. 396, 733 P.2d 365. "Awarding restitution to the victim is improper where a defendant . . . was not convicted of the crime." *Id.* ¶ 7.

**{18}** Our rationale regarding the scope of the conspiracy for which Defendant was convicted also informs the amount of restitution allowable in this case. Because the conspiracy proved at trial was limited to the single transaction Defendant made, an order requiring her to make restitution for all nine of the fraudulent transactions was not authorized by law. *See id.* ¶ 6. We therefore set aside the order of restitution in the judgment and sentence and remand to the district court for recalculation of the restitution amount.

## III. Presentence Confinement Credit

**{19}** Finally, we address Defendant's argument that the district court erred in denying her request for 599 days presentence confinement credit for the period from September

2017, when she was sentenced in an earlier case, until May 2019, when she was sentenced in this case. We begin with the timeline of events.

**{20}** Defendant was already facing charges for identity theft in an unrelated case (Case One) when she was indicted in this case (Case Two) in November 2016. Defendant was released and was out on bond in Case Two in August 2017 when she picked up new charges (Case Three). As a result of Case Three, the district court in Case Two revoked Defendant's conditions of release, issued a bench warrant, and Defendant was arrested on August 17, 2017. The following month, on September 18, 2017, Defendant pleaded guilty in Case One to one count of identity theft and was sentenced to an actual term of four years' imprisonment. Defendant was convicted at trial in Case Two and sentenced on May 9, 2019. Defendant remained in custody continuously between September 17, 2017 and May 9, 2019.

**{21}** At the sentencing hearing in Case Two, the district court sentenced Defendant to an actual term of five-and-a-half years' imprisonment to run consecutively to her prison term in Case One. Defendant requested 599 days of presentence confinement credit for the period she was in custody from sentencing in Case One to sentencing in Case Two. The district court denied her request, concluding that Defendant was not entitled to have the period of time credited twice, i.e., as part of her regular sentence in Case One and again as presentence confinement credit in this case. On appeal, Defendant renews her argument that she is entitled to presentence confinement credit for the time she spent in custody after sentencing in Case One. We review the district court's decision de novo. *State v. French*, 2021-NMCA-052, ¶ 9, 495 P.3d 1198.

**{22}** Presentence confinement credit is governed by statute. NMSA 1978, Section 31-20-12 (1977) states that "[a] person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." When a defendant receives consecutive sentences, the general rule is that presentence confinement credit will be granted only once against the aggregate of all the sentences. *See State v. Romero*, 2002-NMCA-106, ¶ 12, 132 N.M. 745, 55 P.3d 441; *see also State v. Miranda*, 1989-NMCA-068, ¶ 11, 108 N.M. 789, 779 P.2d 976 (adopting the majority rule that "an offender who receives consecutive sentences is entitled to presentence incarceration credit only once against the aggregate of all the sentences, while an offender sentenced to concurrent terms in effect receives credit against each sentence"). This Court recognized an exception to this general rule where, under limited circumstances, a defendant may acquire presentence confinement credit while simultaneously serving a prior sentence. *See State v. Ramzy*, 1982-NMCA-113, ¶ 11, 98 N.M. 436, 649 P.2d 504; *Romero*, 2002-NMCA-106, ¶ 13. We refer to this scenario as "dual credit."[1]

---

[1]We wish to clarify and distinguish the term "dual credit" from "double credit." This Court has used the term "double credit" to describe instances "where a defendant is seeking duplicate presentence confinement credit" toward multiple consecutive sentences. *State v. Cerda*, 2022-NMCA-062, ¶ 11, 519 P.3d 87. As in *Cerda*, we note that "whether presentence confinement that relates to more than one

**{23}** The exception springs from our recognition that a defendant's confinement may relate to charges in more than one case. *See State v. Barefield*, 1979-NMCA-060, ¶¶ 2-7, 28-31, 92 N.M. 768, 595 P.2d 406; *see also Romero*, 2002-NMCA-106, ¶ 11 (stating that the dual credit exception applies when the presentence confinement "is sufficiently related to one sentence when a defendant is involved in multiple judicial proceedings"). When there is a sufficient connection between case two and the confinement at issue, presentence confinement credit is required, even though the time is also counted toward the sentence in case one. *See State v. Facteau*, 1990-NMSC-040, ¶ 5, 109 N.M. 748, 790 P.2d 1029; *see also State v. Orona*, 1982-NMCA-143, ¶ 5, 98 N.M. 668, 651 P.2d 1312 ("[T]he decisive factor is whether the confinement was actually related to the charges of that particular case for which credit is sought." (alteration, internal quotation marks, and citation omitted)). To determine whether there is enough of a connection to warrant dual credit, our courts apply a three-part test drawn from our analysis in *Ramzy*, 1982-NMCA-113, ¶ 11. In general terms, the three prongs are: (1) the defendant was not confined in either case; (2) the charges in case two triggered and caused the confinement in case one, and (3) the defendant was also confined case two. *See id.*; *see also Miranda*, 1989-NMCA-068, ¶ 12 (synthesizing the *Ramzy* factors).

**{24}** To date, the only fact pattern in which we have found a sufficient connection to warrant dual credit is "where the defendant had already been convicted and sentenced in a prior case before being confined based on a second offense." *Cerda*, 2022-NMCA-062, ¶ 13; *see Ramzy*, 1982-NMCA-113; *State v. Irvin*, 1992-NMCA-121, ¶¶ 2-4, 14, 114 N.M. 597, 844 P.2d 847, *abrogated on other grounds by French*, 2021-NMCA-052, ¶ 9 n.2.[2] This was the scenario presented in *Ramzy*. There, the defendant had been convicted and sentenced for charges in a first case (case one), but "[a]n appeal was taken from these convictions and the defendant remained at liberty on appeal bond." *Ramzy*, 1982-NMCA-113, ¶ 3. Months later, the defendant was arrested on charges in a second case (case two). *Id.* ¶ 4. As a result, his appeal bond in case one was revoked and, "[u]pon revocation [the] defendant was immediately incarcerated to begin the service of his sentence in [c]ase [o]ne." *Id.* ¶ 5. Based on these facts, this Court determined that case two had triggered and caused the incarceration. *Id.* ¶ 11. The day after the defendant was brought into custody, bond was set in case two in an amount the defendant could not post. *Id.* ¶ 5. From this, this Court determined there was a

pending case will be double counted"—i.e., double credit—is different from "whether a defendant would be credited with time served toward his sentence in the prior case and still be given single presentence confinement credit in the subsequent case"—i.e., dual credit. *Id.* (providing that *Ramzy*, 1982-NMCA-113, dealt with the latter type of credit); *see also Ramzy*, 1982-NMCA-113, ¶¶ 7-11 (analyzing whether the defendant was entitled to "dual credit"). Only the latter type of credit is at issue here.

2*State v. Barrios*, 1993-NMCA-138, 116 N.M. 580, 865 P.2d 1224, has also been cited as a case in which credit was given. *See State v. Ruiz*, 1995-NMCA-093, ¶ 3, 120 N.M. 420, 902 P.2d 575. However, it appears *Barrios* dealt with double credit rather than dual credit because the defendant had not yet been sentenced in either case and requested credit toward both sentences. 1993-NMCA-138, ¶¶ 2-4. This Court later clarified that the *Ramzy* factors are inapplicable in cases involving a request for double credit for time a defendant is confined before sentencing in either case. *See Romero*, 2002-NMCA-106, ¶ 13; *Cerda*, 2022-NMCA-062, ¶ 11.

sufficient connection between case two and the confinement such that the period of confinement at issue actually related to both cases. *See id.* ¶¶ 8, 11.

**{25}**   In the present case, the facts do not demonstrate a sufficient connection to warrant dual credit. In particular, the second prong of the *Ramzy* test is not satisfied because there is no evidence that Case Two caused and triggered confinement in Case One. In fact, Case Three triggered confinement in Case Two, and there is no evidence that Case Two had any effect on Case One at all. After Defendant's arrest in Case Two in August 2017, she simply remained in custody until she was incidentally sentenced in Case One the following month.

**{26}**   Defendant argues that the second prong is satisfied because "her in-custody status was at least 'partly' caused by the charges in this case." In support of her argument, Defendant relies on language from *Ramzy* and later cases which, taken out of context, appear to suggest that the focus of the second prong analysis is on whether the case two charges caused the confinement. *See id.* ¶ 11 (stating that the defendant's "incarceration and confinement for the period in question was undoubtedly partly, if not totally, caused by [c]ase [t]wo charges"); *Orona*, 1982-NMCA-143, ¶ 6 (stating that the circumstances in that case did not satisfy the *Ramzy* test because charges in the second case "did not cause his confinement in any way"); *Ruiz*, 1995-NMCA-093, ¶ 3 ("A review of our prior cases shows that, in each of them requiring that credit be given, there was something about the fact of incarceration that was either caused by or related to the charges for which credit was sought.").

**{27}**   We recognize that some of our previous cases have described the second *Ramzy* prong imprecisely, and this has led to confusion about the breadth of the exception. We take this opportunity to clarify that the second prong of the *Ramzy* test is not satisfied simply because a defendant's confinement is "caused by or related to" case two, in whole or in part. Rather, the second prong requires a cause-and-effect relationship whereby case two "triggers and causes" the defendant's confinement *in case one. See Ramzy*, 1982-NMCA-113, ¶ 11 (granting dual credit when "[c]ase [t]wo triggered and caused the revocation of the appeal bond in [c]ase [o]ne"); *Miranda*, 1989-NMCA-068, ¶ 12 (acknowledging that the defendant in *Ramzy* received credit because "[case two] triggered and caused the bond revocation in [case one]"); *Facteau*, 1990-NMSC-040, ¶ 7 (denying credit because there was not "a sufficient connection between the circumstances underlying [the] defendant's incarceration [in the first case] and those giving rise to his sentence [in the second case such] that the latter *was the reason* for the presentence incarceration, as in *Ramzy*" (emphasis added)); *Ruiz*, 1995-NMCA-093, ¶ 2 (noting that "[t]here was no evidence offered to prove that the fact of [the d]efendant's incarceration in California was in any way related to or caused by the New Mexico charge"). This cause-and-effect relationship is key to concluding that the confinement is directly attributable to both cases.

**{28}**   Because the required causal relationship is lacking in this case, Defendant is not entitled to dual credit. *Cf. Facteau*, 1990-NMSC-040, ¶ 6 (denying presentence confinement credit because the confinement was for a previous, unfulfilled sentence on

a different charge and was not related to the charge for which credit was sought); *Orona*, 1982-NMCA-143, ¶ 6 (denying presence confinement credit upon sentencing for perjury when the defendant was then confined on a prior sentence for burglary); *State v. Brewton*, 1971-NMCA-120, ¶ 1, 83 N.M. 50, 487 P.2d 1355 (denying a defendant presence confinement credit because confinement during the requested period "was pursuant to his prior sentence").3

**CONCLUSION**

**{29}** For the foregoing reasons, we affirm Defendant's conviction for conspiracy and the district court's denial of presence confinement credit. We set aside the amount of restitution ordered in the judgment and sentence and remand to the district court with instructions to recalculate the amount in accordance with this opinion.

**{30} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**

---

3The State has asked us to overturn *Ramzy*, but has not addressed any of the questions that this Court must consider before overturning precedent. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305. Regardless, in light of our holding it is unnecessary to consider an alternative argument that would support our affirmance of the district court's conclusion.