**Certiorari Denied, December 7, 2015, No. 35,591**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-007**

**Filing Date:  October 7, 2015**

**Docket No.  32,663**

**STATE OF NEW MEXICO,**

>    **Plaintiff-Appellee,**

**v.**

**JOE ANDERSON,**

>    **Defendant-Appellant,**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

**{1}**    Defendant appeals from his conviction for second degree murder asserting that fundamental error was committed when the district court failed to give a necessary instruction that it had agreed to give. Defendant asserts this was fundamental error. Because the instruction was critical to the jury's determination on the issue of self-defense and because the district court had a duty to fully instruct the jury on all relevant aspects of the

law, we agree with Defendant, reverse his conviction, and remand for a new trial.

## I.      BACKGROUND

**{2}**      The trial presented differing accounts to the jury of what happened between Defendant and Vicente Sanchez the night of November 19, 2010. It appears, however, that the following events occurred, subject to some variation.

### A.      Altercation

**{3}**      Sanchez attended a house party on November 19, 2010, at which Defendant was present. The two men took an immediate dislike to each other and got into an argument. When Sanchez's girlfriend tried to intervene, Defendant moved her out of the way, and Sanchez punched Defendant. Defendant fell backward into the next room, and a brawl began between several individuals with apparent loyalties to either Sanchez or Defendant. Sanchez's girlfriend armed herself with a handgun taken from Sanchez's pocket and, upon brandishing the handgun, brought the brawl to a momentary standstill. During the lull, Defendant removed himself and hid behind the doorway of the room into which he fell where he, too, drew a handgun. Believing Sanchez had obtained the gun from his girlfriend by this time, Defendant came out from behind the doorway with his gun raised and fired six shots from a distance of approximately two to three feet, four of which hit Sanchez. Sanchez died from the wounds he sustained, and Defendant was charged with murdering Sanchez.

### B.      Trial—Diagrams

**{4}**      Detective Anton Maltby created diagrams of the home where the altercation occurred as part of his investigation of the incident. The diagrams gave a rough depiction of the location of the house, yard, surrounding buildings, cars, and rooms, as well as provided the layout of the furniture in the rooms. Defense counsel objected to the State's proffer of these diagrams, both during trial and in a motion in limine, claiming that they should be excluded under Rule 11-403 NMRA, asserting they were cumulative because the jury could understand the layout of the buildings and rooms by examining photographs, and misleading because they were not drawn to scale and did not accurately portray the location of the furniture in the living room. The district court overruled the objection because it believed the diagrams were instructive to the jury and because witnesses had acknowledged that they were not drawn to scale.

### C.      Trial—Jury Instructions

**{5}**      During trial, Defendant requested a self-defense instruction (UJI 14-5171 NMRA) and a stand-your-ground (or no-retreat) instruction (UJI 14-5190 NMRA). The district court allowed the self-defense instruction. In response to the State's objection to the no-retreat instruction, the district court held that it was for the jury to decide whether Defendant was standing his ground or re-involving himself in the conflict and that the jury should be able

2

to make an informed decision on that issue. As such, the district court decided to submit the no-retreat instruction to the jury as well.

**{6}** It is undisputed that, although the district court determined that both a general self-defense instruction and a stand-your-ground instruction were warranted in the case, it did not instruct the jury on New Mexico's stand-your-ground law, either orally or in the written instructions.[1] The omission of UJI 14-5190 appears to have been the result of an oversight on the part of the district court and all counsel. During the course of deliberations, the jury submitted a question to the district court asking if there was a "stand-your-ground" law in New Mexico. The jury ultimately withdrew the question because it had "found what [it was] looking for." Defense counsel mistakenly believed that the no-retreat instruction had been included in the written instructions given to the jury and offered the district court reassurances to that effect. Counsel's reassurance, coupled with the withdrawal of the jury's question, ended the court's discussion with counsel regarding the stand-your-ground instruction. The jury ultimately found Defendant guilty of second degree murder, and he appeals.

## II.    DISCUSSION

**{7}** Defendant makes several assertions of error, which we consolidate as an assertion of fundamental error based on the missing jury instruction, an assertion of error based on the admission of a diagram of the house where the altercation occurred, and an assertion of error based on the district court's denial of a modification to UJI 14-250 NMRA.

### A.    The Omission of the Jury Instruction Was Fundamental Error

### 1.    Fundamental Error

**{8}** Defendant did not object to the absence of UJI 14-5190 from the jury instructions when they were given. We therefore review only for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." (citation omitted)); *State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176. An error is fundamental when it " 'goes to the foundation or basis of a defendant's rights.' " *Cunningham*, 2000-NMSC-009, ¶ 13 (quoting *State v. Garcia*, 1942-NMSC-030, ¶ 25, 46 N.M. 302, 128 P.2d 459). "We will not 'uphold a conviction if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked.' " *State v. Rodarte*, 2011-NMCA-067, ¶ 10, 149 N.M. 819, 255 P.3d 397 (quoting *State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633).

---

[1]The written jury instructions appear in consecutive order in the record proper with no gaps and do not include UJI 14-5190.

**{9}** When reviewing jury instruction issues for fundamental error, we first apply the standard for reversible error by determining if a reasonable juror would have been "confused or misdirected" by the jury instructions that were given. *Barber*, 2004-NMSC-019, ¶ 19. Juror confusion or misdirection may stem "from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12. If we determine that a reasonable juror would have been confused or misdirected by the instructions given, our fundamental error analysis requires us to then " 'review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice.' " *State v. Sandoval*, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (quoting *Barber*, 2004-NMSC-019, ¶ 19). If such a miscarriage of justice exists, we deem it fundamental error.

## 2.    The Jury Was Misdirected by the Instructions Issued

**{10}** The State makes no challenge to the district court's decision that the instruction was warranted but states it was solely Defendant's responsibility to ensure it was given. We disagree with this limited view. Where there is any evidence to establish a self-defense theory, it is the duty of the court to fully and clearly instruct the jury on all relevant aspects of self-defense. *Benally*, 2001-NMSC-033, ¶ 41; *State v. Heisler*, 1954-NMSC-032, ¶ 23, 58 N.M. 446, 272 P.2d 660 (stating that "where self-defense is involved in a criminal case and there is any evidence, although slight, to establish [self-defense], it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly on all phases of the law on the issue that are warranted by the evidence"). The district court's conclusion that there was evidence to support the issuance of both the general self-defense instruction and the no-retreat instruction triggered the district court's duty to fully and clearly instruct the jury on both self-defense and no-retreat. *See Heisler*, 1954-NMSC-032, ¶ 23.

**{11}** The jury was informed of the elements of self-defense: (1) Defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) Defendant acted reasonably when he or she killed. *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170; *see also* UJI 14-5171 (enumerating the elements of self-defense). The jury was not, however, informed as required by UJI 14-5190 that a person "who is threatened with an attack need not retreat. In the exercise of his right of self[-]defense, he may stand his ground and defend himself."

**{12}** Because of the omission, the jury's understanding of all of the elements of the law governing self-defense was deficient. We conclude not only that a reasonable juror would have been misdirected by the jury instructions given, but also that the jury in Defendant's case was misdirected. As such, there was reversible error below; we now turn to an analysis of whether there was fundamental error.

**{13}** The State maintains that UJI 14-5190 is a definition or amplification of an essential self-defense element and that its omission from the given instructions therefore does not rise

4

to the level of fundamental error. *See State v. Coffin*, 1999-NMSC-038, ¶ 17, 128 N.M. 192, 991 P.2d 477 (stating that "it is error to refuse a requested instruction defining or amplifying an element only if 'the element was not adequately covered by the instructions given' " (citation omitted)). While failure to instruct on a definition does not ordinarily rise to the level of fundamental error, some definitional instructions provide "a determination critical to understanding the elements instruction" and, as such, can be of central importance to a fair trial. *Barber*, 2004-NMSC-019, ¶¶ 20, 24-25 (discussing *State v. Mascareñas*, 2000-NMSC-017, 129 N.M. 230, 4 P.3d 1221). In order to determine whether UJI 14-5190 is a definitional instruction that "provided a determination critical to understanding" the self-defense instruction, we must consider all the facts and circumstances and decide "whether the missing instruction caused such confusion that the jury could have convicted [the d]efendant based upon a deficient understanding" of the law regarding self-defense. *Barber*, 2004-NMSC-019, ¶ 25 (concluding amplification of an instruction to provide a critical definition can prevent juror confusion). If such confusion existed, even if UJI 14-5190 is viewed as a definitional instruction, its omission may nevertheless constitute fundamental error.

**{14}** Where the evidentiary basis for the instruction has been laid, UJI 14-5190 informs jurors of what is reasonable under the third prong of UJI 14-5190, and it is therefore critical to understanding the third element of a general self-defense instruction. *See Barber*, 2004-NMSC-019, ¶ 25 (recognizing the necessity for jury instruction when absence of clarification would render the jury's understanding of the law deficient). Because Defendant's self-defense theory rests on the argument that, under the circumstances, he had no duty to retreat from the confrontation with Sanchez, and it is undisputed that that theory rests upon a correct statement of the law, we agree that the instructions provided to the jury failed to fully and adequately inform them of the law of self-defense relevant to the case. The jury was required to make a critical determination of whether Defendant acted reasonably when he killed Sanchez and could not make that determination without being informed as to whether New Mexico law deems it reasonable to stand-your-ground when retreat is possible. Omission of UJI 14-5190 alters what "reasonable" means in the context of self-defense in this case.

### 3.    The No-Retreat Instruction Was Critical to the Jury's Self-Defense Determination

**{15}** We recognize that courts generally disfavor finding fundamental error where a definition is omitted from jury instructions. That reluctance is premised on the concept that many definitions carry common meanings that are comparable to legal meanings and, as such, their omission does not prejudice a defendant's rights. *See Barber*, 2004-NMSC-019, ¶ 22 (acknowledging that potential for jury confusion exists where the legal definition of a term is "not necessarily rooted in common discourse"); A.M. Swarthout, Annotation, *Duty in Instructing Jury in Criminal Prosecution to Explain and Define Offense Charged*, 169 A.L.R. 315, III(g) (acknowledging that while trial courts may have a "duty to define or explain technical words[,]" they often have no duty to define "nontechnical, self-explaining

words or phrases which are of easy comprehension to the ordinary layman"). That is not the case here. Rather, the term "reasonable" in the third prong of the self-defense instruction carries a different meaning when read in conjunction with the no-retreat instruction than it does alone. Read alone, a person exercising the "degree of attention, knowledge, intelligence, and judgment that society requires of its members" is acting reasonably. *Black's Law Dictionary* (10th ed. 2014) (defining "reasonable person"). When read together with the no-retreat instruction, however, a person who, when threatened with an attack, does not retreat and stands his ground when exercising his right of self-defense is acting reasonably. *See* UJI 14-5190; *cf. Brown v. United States*, 256 U.S. 335, 344 (1921) (acknowledging that retreat, or failure to retreat, is a fact to be considered in determining whether actions made in self-defense were reasonable); *Rowe v. United States*, 164 U.S. 546, 558 (1896) (holding that a defendant's self-defense acts were reasonable where the law did not require him to retreat when threatened with a deadly weapon). Thus, we conclude that once the district court determined the propriety of giving it, the failure to provide the no-retreat instruction that informed a determination critical to the case was akin to a missing elements instruction. *Cf. Mascareñas*, 2000-NMSC-017, ¶ 20 (concluding that the definition of "reckless disregard" was not a mere amplification of a term and instead was more akin to an element instruction because it was aimed at preventing confusion of the standard necessary to sustain a conviction).

**{16}** Given the difference between the reasonableness standard of a self-defense instruction alone and a self-defense instruction read in conjunction with the no-retreat instruction, there is simply no way to determine to which standard Defendant was held. The jury's specific question on the subject and the absence of the instruction specifically informing the jury of the law, reinforce our conclusion. We therefore cannot determine that the jury delivered its verdict on a legally sound basis. The jury answered its own question regarding no-retreat with other information than the correct instruction. It was not fully and clearly informed as to the law governing the case and likely made its decision based, at least in some part, on a deficient understanding of the law governing self-defense.

**{17}** We conclude the jury's question regarding New Mexico's "stand-your-ground" law and its subsequent withdrawal of that question, is evidence that the jury needed the no-retreat instruction not only to be fully apprised of all relevant aspects of the law governing self-defense but also in order to avoid being misdirected by the instructions given. *See State v. Navarez*, 2010-NMCA-049, ¶ 25, 148 N.M. 820, 242 P.2d 387 (concluding that jury confusion was established by the jury's question to the trial court judge). The jury ultimately withdrew the question because it had "found what [it] was looking for[,]" namely, the "stand-your-ground" standard in New Mexico. We have no way of knowing what the jury found to clear up its confusion, but it was not UJI 14-5190.

## B. Waiver Does Not Prohibit Fundamental Error Analysis

**{18}** The failure of defense counsel to realize that the complete UJI 14-5190 was not given, does not bear upon our fundamental error analysis. The very nature of fundamental

error review is to protect rights that are essential to a defendant's defense and "which no court could or ought to permit him to waive." *State v. Garcia*, 1942-NMSC-030, ¶ 25, 46 N.M. 302, 128 P.2d 459. Fundamental error provides a means of relief that may not otherwise be available to defendants: "Where a man's fundamental rights have been violated, while he may be precluded by the terms of the statute or the rules of appellate procedure from insisting . . . upon relief . . . , this court has the power, in its discretion, to relieve him and to see that injustice is not done." *Id.* ¶ 23 (internal quotation marks and citation omitted). As such, the fundamental error doctrine stands as "[a]n exception to the general rule barring review of questions not properly preserved below." *State v. Osborne*, 1991-NMSC-032, ¶ 38, 111 N.M. 654, 808 P.2d 624 (internal quotation marks and citation omitted). Our courts have consistently acknowledged that waiver does not preclude courts from protecting a defendant's rights on appeal where fundamental error exists. *See, e.g.*, *State v. Villa*, 2004-NMSC-031, ¶ 15, 136 N.M. 367, 98 P.3d 1017 ("*Except in cases of fundamental error*, timely objections to improper instructions must be made or error, if any, will be regarded as waived in every case." (emphasis added) (alteration, internal quotation marks, and citation omitted)); *State v. Boeglin*, 1987-NMSC-002, ¶ 11, 105 N.M. 247, 731 P.2d 943 (concluding that, although the defendant's failure to object to incomplete instructions constituted a waiver of the objection, appellate courts "nevertheless will grant relief if fundamental error has occurred in a particular case").

**{19}** In light of existing precedent, even if Defendant did waive his objection to the omitted jury instruction, his waiver would not preclude our fundamental error analysis. *Cf. State v. Foxen*, 2001-NMCA-061, ¶ 12, 130 N.M. 670, 29 P.3d 1071 (declining to characterize omission of instruction as invited error where deficiencies in the jury instructions "were simply the result of oversight or neglect[,]" applying fundamental error analysis). We therefore conclude that, in light of the importance that self-defense and no-retreat had in Defendant's case, allowing his conviction to stand without adequate jury instructions would undermine judicial integrity and the legitimacy of the jury's verdict. *See Cunningham*, 2000-NMSC-009, ¶ 21 (inclining toward reversal if error indicated a fundamental unfairness within the system that would undermine judicial integrity). We conclude that Defendant's conviction was tainted by fundamental error and must be reversed. *See State v. Gee*, 2004-NMCA-042, ¶ 8, 135 N.M. 408, 89 P.3d 80 (stating that appellate courts "reverse for fundamental error when the foundation or basis of a defendant's case . . . is affected").

**{20}** Although this Opinion could end here with reversal, other issues raised by Defendant are likely to arise upon a retrial of the case. *See State v. Beal*, 1944-NMSC-011, ¶ 28, 48 N.M. 84, 146 P.2d 175. We therefore proceed to consider whether the district court erred in allowing the diagrams to be admitted and whether it erred by refusing Defendant's modifications to UJI 14-250.

## C.      The District Court Did Not Abuse its Discretion in Admitting the Diagrams

**{21}** Appellate courts review a district court's decision to admit or exclude evidence for

an abuse of discretion. *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. District courts have broad discretion when applying Rule 11-403. *Guerra*, 2012-NMSC-014, ¶ 36 (citing *State v. Chamberlain*, 1991-NMSC-094, ¶ 9, 112 N.M. 723, 819 P.2d 673).

**{22}** Defendant contends that under Rule 11-403, the district court abused its discretion by admitting diagrams that an investigating detective made because they had the potential to mislead the jury. Rule 11-403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**{23}** We conclude that the district court did not abuse its discretion in determining that the danger that the jury would be misled as to the size of the living room did not outweigh the probative value of the diagrams. This was especially true because several witnesses testified to the actual size of the space. In addition, photographs entered into evidence showed the space and revealed the actual placement of the furniture. The district court even attached a caption to each diagram to emphasize that they were not drawn to scale. In light of the foregoing, we conclude that Defendant has not demonstrated that the district court abused its discretion.

**D.     The District Court Did Not Err in Refusing Defendant's Modification of the UJI**

**{24}** Although Defendant asserts the district court erred in refusing to allow his modified version of UJI 14-250, which addresses jury procedure for the various degrees of homicide, we conclude that it properly refused the requested instruction. The district court was bound to give UJI 14-250 "without substantive modifications or substitution." UJI Crim. General Use Note NMRA (stating that "when a uniform instruction is provided for the elements of a crime, a defense or a general explanatory instruction on evidence or trial procedure, the uniform instruction must be used without substantive modification or substitution"); *see, e.g.*, *State v. Watchman*, 2005-NMCA-125, ¶ 15, 138 N.M. 488, 122 P.3d 855 (stating that "there are a host of cases standing for the proposition that the uniform jury instructions and use notes are to be followed without substantial modification" (internal quotation marks and citation omitted)). Defendant requested the district court to submit an instruction to the jury stating, "If you find the state has not proved beyond a reasonable doubt that the defendant did not act in self-defense, you do not need to consider whether the defendant acted with sufficient provocation, and you must find the defendant not guilty." Even without the general use note setting forth a requirement that UJIs not be modified, the instructions given to the jury were sufficient to assuage any concern that the jury was not adequately instructed on the necessary standards.

**{25}** Reviewing all of the jury instructions as a whole, it is unlikely a reasonable juror would have been confused or misdirected. *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591. The language that the district court rejected and Defendant complains should have been included, is virtually the same as the language included at the end of UJI

14-5190, the self-defense instruction. *See* UJI 14-5171 ("The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self[-]defense. If you have a reasonable doubt as to whether the defendant acted in self-defense you must find the defendant not guilty."). We therefore conclude that the district court properly rejected Defendant's proffered modifications to UJI 14-250.

## III.    CONCLUSION

**{26}**    Defendant was deprived of a fair trial by the absence of a no-retreat instruction. We therefore reverse his conviction and remand for a new trial. We conclude there was no abuse of discretion in the district court's decision to allow the diagrams into evidence, subject to a limiting instruction. We also conclude there was no error in the district court's refusal to modify UJI 14-250.

**{27}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**CYNTHIA A. FRY, Judge**

9