| STATE V. MATEO |
|---|

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**DENNYS MATEO,**
**Defendant-Appellant.**

Docket No. A-1-CA-35752
COURT OF APPEALS OF NEW MEXICO
April 25, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Jacqueline D. Flores, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Maris Veidemanis, Assistant Attorney General, Santa Fe, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Santa Fe, NM, MJ Edge, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

**JUDGES**

JULIE J. VARGAS, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge, LINDA M. VANZI, Judge

**AUTHOR:** JULIE J. VARGAS

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}**     Defendant Dennys Mateo appeals his convictions for shooting from a motor vehicle resulting in great bodily harm, two counts of tampering with evidence, conspiracy to commit shooting from a motor vehicle resulting in great bodily harm, and felon in possession of a firearm. He argues that he is entitled to a new trial for three reasons: (1) the district court erred in denying his request for a self-defense jury

instruction at the close of the State's case, thereby compelling Defendant to testify; (2) the district court committed fundamental error when it failed to provide the jury with an instruction that Defendant had no duty to retreat; and (3) Defendant's trial counsel was ineffective. We affirm.

## BACKGROUND

**{2}** At trial, the State presented three eyewitness accounts of what happened on the day Defendant shot Kevin Sweinhart (Victim) from the passenger seat of an SUV. At the close of the State's case, Defendant inquired as to whether the district court intended to give the jury an instruction on self-defense. The district court ruled that the evidence presented in the State's case-in-chief was insufficient to support a self-defense instruction. Defendant then testified that he shot Victim out of fear for his own safety, and in so doing, offered yet another version of events for the jury's consideration. At the close of the evidence, the district court instructed the jury and included a self-defense instruction. The jury convicted Defendant of shooting from a motor vehicle causing great bodily harm, two counts of tampering with evidence, conspiracy to commit shooting from a motor vehicle resulting in great bodily harm, and felon in possession of a firearm. Defendant appeals his convictions.[1]

## DISCUSSION

### I. Self-Defense Under the State's Evidence

**{3}** Defendant argues the district court erred by denying his request for a self-defense instruction immediately after the State's case-in-chief. He also argues that, by denying the requested instruction, the district court compelled him to testify in violation of his Fifth Amendment right to remain silent. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438 (stating courts do not weigh the evidence, but consider whether it is sufficient "to raise a reasonable doubt about self-defense"). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *State v. Swick*, 2012-NMSC-018, ¶ 60, 279 P.3d 747 (alteration, internal quotation marks, and citation omitted). "Where there is enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense such that reasonable minds could differ, the instruction should be given." *State v. Baroz*, 2017-NMSC-030, ¶ 15, 404 P.3d 769 (omission, alteration, internal quotation marks, and citation omitted).

**{4}** "An instruction on self-defense requires evidence that (1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed."

---

[1] The jury also convicted Defendant of voluntary manslaughter, but the district court vacated the voluntary manslaughter conviction because it arose from the same conduct resulting in the shooting from a motor vehicle conviction.

*Id.* ¶ 14 (internal quotation marks and citation omitted). The first two requirements are subjective, and "focus on the perception of the defendant at the time of the incident." *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477. The third requirement, on the other hand, is objective and "focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *Id.*; *see Swick*, 2012-NMSC-018, ¶ 65 (stating "that a defendant is not entitled to a self-defense instruction when the defendant's response to the threat was unreasonable").

**{5}**     With these requirements and standards in mind, we turn to the State's evidence at trial, which consisted primarily of eyewitness testimony. Eyewitness Jamie Pagett was driving home from work when she saw Victim run, full speed, toward a parked SUV, heard a pop, and saw Victim fall to the ground. The SUV immediately pulled into traffic directly in front of Pagett, who stopped and got out of her vehicle and approached Victim. Pagett saw that there was blood on Victim and that he had a knife in his right hand. She was unsure whether the passenger side window of the SUV was open, but assumed it was because there was no broken glass on the ground, and she never saw any of the SUV's occupants. She also testified that Victim appeared angry when he was running, although she was not close enough to see any expression on his face.

**{6}**     Juan Ramirez was walking to a friend's house when he saw two men sprinting and being chased by Victim, who was yelling at them to stop. The two men got into an SUV and Victim followed one of the men to the front passenger door, where he began banging on the window. After a failed attempt to enter the SUV, Victim went to the back of the SUV and began calling out the license plate number. When Victim began walking back toward the front passenger door of the SUV, the door opened slightly and Ramirez heard a gunshot, after which the black SUV rapidly left the scene. Ramirez discovered after Victim had been shot that Victim had a knife in his hand, but never saw Victim make any stabbing motions or threaten anyone with the knife.

**{7}**     Amy Bolin was driving home from school when she saw Victim standing outside an SUV, trying to gain entry to the vehicle. Victim had a knife in his hand and was swinging it around during a heated argument that Victim and Defendant were having through the open window of the front passenger door. At one point, Victim moved away from the window toward the back of the SUV, and began trying to gain access to the interior of the SUV through the rear passenger door. While he was at the rear passenger door, the SUV began to move away, and Defendant leaned out the window and shot Victim. According to Bolin, Victim was close enough to the SUV to reach inside through the open window, but she did not see him do so. The State also presented testimony from the case's lead investigator, who testified to seeing a cut on Defendant's hand that could have been caused by Victim's knife, though Defendant's DNA was not found on the knife.

**{8}**     For Defendant to have been entitled to a self-defense instruction at the close of the State's evidence, he would have had to introduce evidence of all three elements of self-defense. *See State v. Emmons*, 2007-NMCA-082, ¶ 7, 141 N.M. 875, 161 P.3d 920. We conclude that Defendant's failure to introduce evidence to satisfy the third

element, whether Defendant acted reasonably when he killed, is dispositive of Defendant's argument and we therefore need not address the first two. To be entitled to a self-defense instruction, a defendant must point us to evidence supporting an objective determination that Defendant acted reasonably when he or she killed. *Baroz*, 2017-NMSC-030, ¶ 14 (describing the third element of self-defense as objective). Defendant has failed to do so. By all three eyewitness accounts presented in the State's case-in-chief, Defendant was inside the SUV at the time Victim reached him, protected from the threat Victim posed. *See id.* ¶ 18 (noting that the defendant had "the additional benefit of being inside the truck, which would have offered protection if [the v]ictim had a gun, and provided the means for a swift escape if the situation had escalated").

**{9}** Of the witnesses testifying in the State's case-in-chief, one witness testified the passenger-side window was up, another testified it was down, a third was unsure, and no witness affirmatively testified that Victim reached through the SUV's window with the knife, intruding upon the protection afforded by the vehicle. With no evidence that Victim reached into the car, the evidence presented in the State's case-in-chief was insufficient to support the third element of self-defense, that Defendant's actions were reasonable when he shot and killed victim. *See id.* Because the evidence presented in the State's case-in-chief was insufficient to support every element of self-defense, the district court did not err in denying Defendant's request for a self-defense instruction after the State's case-in-chief. *See generally Emmons*, 2007-NMCA-082, ¶ 7 ("For the jury instruction concerning the defense to be given, the evidence must support every element of that defense."). Defendant concedes that we need not address his remaining Fifth Amendment argument if—as was the case, here— denial of the self-defense instruction was proper.

## II. Duty to Retreat

**{10}** The district court's instructions to the jury at the close of the evidence included a self-defense instruction modeled after UJI 14-5171 NMRA, stating:

Evidence has been presented that [D]efendant acted in self [-]defense.

The killing is in self[-]defense if:

1. There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim] approaching him with a knife; and

2. [D]efendant was in fact put in fear of immediate death or great bodily harm and killed [Victim] because of that fear; and

3. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.

The burden is on the [S]tate to prove beyond a reasonable doubt that [Defendant] did not act in self[-]defense. If you have a reasonable doubt as to whether [D]efendant acted in self[-]defense, you must find [D]efendant not guilty.

**{11}** Defendant argues the district court committed fundamental error when it failed to give the jury a no-duty-to-retreat instruction to accompany the self-defense instruction. UJI 14-5190 NMRA, the no-retreat (or stand-your-ground) instruction, states that, "A person who is defending against an attack need not retreat. In the exercise of the right of self-defense, a person may stand the person's ground and defend himself." The propriety of the jury instructions presents a mixed question of law and fact, which we review de novo. See Lucero, 2010-NMSC-011, ¶ 11. Because Defendant did not request that the district court instruct the jury that he had no duty to retreat, we review this argument for fundamental error. See Rule 12-321(B)(2)(c) NMRA (2016).[2] "The doctrine of fundamental error applies only under exceptional circumstances[,]" State v. Barber, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633, and a party "alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." State v. Cunningham, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted)).

**{12}** A fundamental error review of jury instructions requires that we first consider "whether a reasonable juror would have been confused or misdirected by the jury instruction." Barber, 2004-NMSC-019, ¶ 19. If we determine a reasonable juror would have been confused, we then "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." State v. Sandoval, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citations omitted); see State v. Anderson, 2016-NMCA-007, ¶ 9, 364 P.3d 306. "For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." State v. Caldwell, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citations omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." State v. Benally, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{13}** Defendant does not challenge the propriety of the self-defense instruction given at the close of the evidence but argues that "[t]he jury might mistakenly conclude that [Defendant] violated a non-existent duty to retreat," and that "[f]ailure to instruct the jury on the doctrine of no-retreat in cases like this creates a risk that the jury won't acquit because it considers [a] defendant's use of force unreasonable in light of the possibility of retreat."

---

[2] Rule 12-216 NMRA was recompiled and amended as Rule 12-321 NMRA, effective December 16, 2016.

**{14}** To be entitled to a no-retreat instruction, however, the defendant must first have laid an appropriate evidentiary basis to support the instruction. *See State v. Candelaria*, 2019-NMSC-004, ¶ 35, 434 P.3d 297 (holding the district court did not commit error when it failed to give a no-retreat instruction in the absence of an evidentiary basis for the instruction). Here, Defendant did not argue that he had no duty to retreat from Victim, and the district court made no determination that the no-retreat instruction was warranted. Defendant argues that "eyewitnesses say the shot occur[ed] in close proximity to [the driver] getting the car moving," and that Defendant testified he was "trying to fend off [Victim's] blows by leaning back in his seat." Defendant's theory of the case presented to the district court, however, did not include a claim that these facts "call into question the issue of retreat[,]" as he now claims. Absent an argument to the district court that Defendant had no duty to retreat and was entitled to stand his ground and defend himself, a reasonable juror would not have been "confused or misdirected" by the omission of the no-retreat instruction. We conclude that the district court did not commit fundamental error by failing to give the instruction. *See Candelaria,* 2019-NMSC-004, ¶¶ 36, 37 (concluding no jury confusion resulted when no-duty-to-retreat argument did not form any part of the defendant's theory of the case); *compare Anderson*, 2016-NMCA-007, ¶ 17 (concluding that "the jury's question [regarding the duty to retreat] and its subsequent withdrawal of that question" evidenced the need for the no-retreat instruction "to avoid being misdirected by the instructions given").

**{15}** Defendant has failed to show that the circumstances of this case "shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Cunningham,* 2000-NMSC-009, ¶ 21. The district court's failure to give a no-duty-to-retreat instruction was not fundamental error.

### III.     Ineffective Assistance of Counsel

**{16}** Defendant argues his trial counsel was ineffective because he did not directly impeach Ramirez with inconsistent pretrial statements. "To evaluate a claim of ineffective assistance of counsel, we apply the two-prong test in *Strickland v. Washington*, 466 U.S. 668[ (1984),]" which "places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M. 719, 204 P.3d 44. When the record on appeal does not establish a prima facie case of ineffective assistance of counsel, the preferred method of resolving such a claim is through habeas corpus proceedings. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. " 'Such a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel.' " *State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799  (quoting *State v. Swavola*, 1992-NMCA-089, ¶ 3, 114 N.M. 472, 840 P.2d 1238); *see State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 ("If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable."). "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted).

**{17}** Defendant's assertions of error implicate tactical decisions made by counsel at or during trial, which we will not second guess here. Defendant's claimed errors are best evaluated during habeas corpus proceedings. *See Bernal*, 2006-NMSC-050, ¶ 35 (characterizing claim that trial counsel failed to adequately cross-examine witness as a claimed error better left to habeas proceedings).

**CONCLUSION**

**{18}** We affirm Defendant's convictions.

**{19}** **IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**LINDA M. VANZI, Judge**