This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **No. A-1-CA-35352**

**MATTHEW MORA,**

       Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}**    Defendant appeals his convictions for voluntary manslaughter in violation of NMSA 1978, § 30-2-3 (1994) and tampering with evidence in violation of NMSA 1978, § 30-22-5 (2003). Defendant argues that (1) giving self-defense and defense-of-another instructions without a no-retreat instruction was fundamental error; (2) the evidence of tampering with evidence is insufficient; and (3) the district court abused its discretion by denying Defendant's motion for mistrial. We affirm.

## BACKGROUND

**{2}**     On April 7, 2013, Defendant fired a gun at Jabar Lewis and Angelo Burdex at an Albuquerque nightclub, killing Lewis and injuring Burdex. Defendant initially denied shooting Lewis and Burdex but eventually acknowledged that he fired the shots. He then claimed that he did so in self-defense and in defense of his friend, Ahmad Williams.

**{3}**     The State's only eyewitness at trial was Burdex. Burdex testified that Williams and his friend Lewis began arguing with each other in the bar area of the club. Burdex intervened to try to stop the fight. Williams and Burdex began arguing, Williams threatened to punch Burdex, and Burdex punched Williams. Shots were fired, and Burdex realized he had been shot. He went to the hospital and was treated for his injuries. He later learned that Lewis had been shot and killed. According to Burdex, neither he nor Lewis had a gun at the club on the night of the shooting.

**{4}**     The only other eyewitness was Defendant, who testified that he shot Lewis and Burdex to defend himself and Williams. Defendant testified that shortly before he shot Lewis, when he and Lewis were near the bar, Lewis "pointed a gun at [him]" and "threatened [him]." Lewis pointed the gun at Defendant's "groin area," and then "raised the gun up," "put[ting] it to [his] face." According to Defendant, Burdex pulled a gun out of his right pocket and told Williams, "I will kill you tonight. Don't play with me." Lewis then asked Defendant, "Do you want to die tonight?" Defendant testified that Lewis "had his finger on the trigger and I thought he was going to shoot me." Lewis then walked toward Williams and Burdex, who were now arguing away from the bar area, closer to the door to the club. Lewis "had the gun in his left hand," and when he "lifted up the gun," that was "when everything happened." Defendant saw Burdex strike Williams. An unnamed friend of Defendant hit Burdex, and Lewis hit the unnamed friend while raising the gun in his left hand. Defendant then fired the gun at Burdex and Lewis.

**{5}**     The State admitted a security video recording into evidence. The recording showed Burdex and Williams talking, Burdex walking away from Williams, Williams following Burdex, and Burdex punching Williams in the face. The video also depicted Defendant firing at Lewis and Williams. The video does not show either Lewis or Burdex holding a gun.

**{6}**     The jury found Defendant not guilty of (1) first-degree murder and second-degree murder for the shooting of Lewis; (2) attempt to commit first-degree murder for the shooting of Burdex; (3) aggravated battery with great bodily harm and aggravated battery with a deadly weapon for the shooting of Burdex; and (4) conspiracy to commit tampering with evidence. However, the jury found Defendant guilty of voluntary manslaughter for shooting Lewis and guilty of tampering with evidence based on his actions with respect to the gun he used in the shootings, which we discuss below. Defendant appeals.

**DISCUSSION**

**I.      The Absence of a No-Retreat Instruction Was Not Fundamental Error**

**{7}** Defendant argues that it was fundamental error not to instruct the jury that Defendant had a right to stand his ground and had no duty to retreat from Lewis and that we must therefore reverse his conviction for manslaughter. We disagree. Although it was error to omit the no-retreat instruction, the error was not fundamental.

**{8}** "The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. When "there is any evidence to establish a self-defense theory, it is the duty of the court to fully and clearly instruct the jury on all relevant aspects of self-defense." *State v. Anderson*, 2016-NMCA-007, ¶ 10, 364 P.3d 306. The particular instruction at issue, UJI 14-5190 NMRA, informs jurors that in New Mexico a person who is defending against an attack "need not retreat" and may instead "stand the person's ground[.]"

**{9}** Because Defendant did not object to the omission of an instruction based on UJI 14-5190 or request such an instruction, we review only for fundamental error. *Candelaria*, 2019-NMSC-004, ¶ 31. We first determine whether omitting the instruction was reversible error—whether "a reasonable juror would have been confused or misdirected by the jury instructions that were given." *Id.* ¶ 35 (internal quotation marks and citation omitted). Confusion or misdirection may result from instructions that are "facially contradictory or ambiguous," as well as those that, "through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "If . . . a reasonable juror would have been confused or misdirected, then we review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *Candelaria*, 2019-NMSC-004, ¶ 31 (internal quotation marks and citation omitted).

**{10}** Defendant relies primarily on *Anderson*, 2016-NMCA-007, ¶¶ 8-19, a murder case in which we held that it was fundamental error to omit a no-retreat instruction based on UJI 14-5190. In *Anderson*, the defendant and the victim were involved in an argument. *Id.* ¶ 3. The victim's girlfriend tried to intervene, the defendant tried to move her, and the victim punched the defendant, who fell into the next room. *Id.* A brawl ensued, but the victim's girlfriend "brought [it] to a momentary standstill" by brandishing a handgun. *Id.* Hiding behind a doorway, the defendant drew a handgun. *Id.* The defendant, who believed the victim had obtained the gun from his girlfriend, then "came out from behind the doorway with his gun raised and fired six shots[,]" killing the victim. *Id.*

**{11}** In reviewing the defendant's fundamental error claim, we explained that where "the evidentiary basis for the instruction has been laid, UJI 14-5190 informs jurors of what is reasonable under the third prong of [UJI 14-5171 NMRA, the uniform jury instruction on self-defense]." *Anderson*, 2016-NMCA-007, ¶ 14. That prong asks jurors to determine whether "[a] reasonable person in the same circumstances as the

defendant would have acted as the defendant did." UJI 14-5171; *see Anderson*, 2016-NMCA-007, ¶ 14. We recognized that

> the term "reasonable" . . . carries a different meaning when read in conjunction with the no-retreat instruction than it does alone. Read alone, a person exercising the "degree of attention, knowledge, intelligence, and judgment that society requires of its members" is acting reasonably. When read together with the no-retreat instruction, however, a person who, when threatened with an attack, does not retreat and stands his ground when exercising his right of self-defense is acting reasonably.

*Anderson*, 2016-NMCA-007, ¶ 15 (citation omitted). Based on the record evidence, we reasoned that "[t]he jury was required to make a critical determination of whether [the d]efendant acted reasonably when he killed [the victim] and could not make that determination without being informed as to whether New Mexico law deems it reasonable to stand-your-ground when retreat is possible." *Id.* ¶ 14. The missing no-retreat instruction "was akin to a missing elements instruction[,]" *id.* ¶ 15, and, without it, "the jury's understanding of all of the elements of the law governing self-defense was deficient," *id.* ¶ 12. We "conclude[d] that, in light of the importance that self-defense and no-retreat had in [the d]efendant's case, allowing his conviction to stand without adequate jury instructions would undermine judicial integrity and the legitimacy of the jury's verdict." *Id.* ¶ 19. Because Defendant's second-degree murder conviction was "tainted by fundamental error[,]" we reversed. *Id.*

**{12}** As in *Anderson*, in Defendant's case the parties' trial presentations raised a legal question that the jury instructions did not answer: whether a reasonable person would have retreated instead of shooting. The defense-of-another instruction pertaining to the shooting of Lewis focused on Lewis allegedly pointing a gun at Williams. The instruction read, in pertinent part:

The killing was in defense of another if:

> 1.      There was an appearance of immediate danger of death or great bodily harm to the . . . Williams as a result of  . . . Lewis pointing a gun at . . . Williams; and

> 2.      [D]efendant believed that . . . Williams was in immediate danger of death or great bodily harm from . . . Lewis and killed . . . Lewis to prevent the death or great bodily harm; and

> 3.      The apparent danger to . . . Williams would have caused a reasonable person in the same circumstances to act as [D]efendant did.

The self-defense instruction pertaining to the shooting of Lewis focused on the threat that Lewis made against Defendant when, according to Defendant, Lewis pointed a gun

at Defendant in the bar area shortly before pointing a gun at Williams. The instruction stated, in pertinent part:

The killing was in self defense if:

> 1.      There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of . . .  Lewis pointing a gun at [D]efendant;

> 2.      [D]efendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed . . . Lewis because of that fear;

> 3.      A reasonable person in the same circumstances as [D]efendant would have acted as [D]efendant did.

**{13}**   During closing argument, defense counsel focused on Defendant's testimony that Lewis threatened Defendant in the bar area before the altercation between Lewis, Burdex, and Williams during which Defendant shot Lewis. Defense counsel argued that "we wouldn't be here if [Defendant had] run out the back door" after Lewis pointed the gun at him and asked him if he wanted to die, but that the confrontation between Lewis, Burdex, and Williams was underway at the club exit, preventing Defendant from leaving the club. Defense counsel argued that Defendant "had a right to do what he did" because, during the first part of the altercation in the bar area, "he had a gun pointed in his face."

**{14}**   In rebuttal, the State repeatedly commented on Defendant's decision not to retreat, drawing a connection between that decision and whether he behaved reasonably. In response to defense counsel's request that the jurors place themselves in Defendant's situation, the prosecutor argued, "What would you do? Reason and common sense dictate[ that,] if you were threatened, you would get to a safe place." The prosecutor made the point a second time: "Common sense and reason. If [D]efendant was so scared, why didn't he leave? [Defense counsel] mentioned a back door. If that was the case, he could have went out the back door." Finally, the prosecutor argued that Defendant "had numerous choices that night," and that Defendant "chose to stay at the club. The doors were not locked. He chose to shoot."

**{15}**   Absent a no-retreat instruction, the prosecutor's remarks posed a significant risk of jury confusion and misdirection.[1] Based on the prosecutor's remarks, a reasonable

---

1 The State argues that these comments could be understood to pertain to whether the jury should believe Defendant's testimony that Lewis pointed a gun at Defendant and, soon after, at Williams. So understood, the prosecutor's comments relate only to whether Defendant believed that he and Williams were in immediate danger of death or great bodily harm when he fired the shots. However, if the prosecutor only intended for the remarks to have such a limited reach, the prosecutor did not say so. Without guidance from a no-retreat instruction and without limitation on the purpose of these remarks, the remarks are, at best, ambiguous. A reasonable juror could have concluded that the prosecutor was arguing that Defendant acted unreasonably by failing to retreat.

juror could have rejected Defendant's self-defense theory based on a misunderstanding of New Mexico law. Because the jury received no instruction explaining that Defendant had a right to stand his ground, a juror could have concluded that Defendant acted unreasonably by not retreating at any point after Lewis allegedly pointed the gun at Defendant and threatened him. Considering all of the circumstances, including the parties' presentations, the omission of a no-retreat instruction *could have* confused or misdirected a reasonable juror.[2]

**{16}** However, we do not believe the omission of the instruction rose to the level of fundamental error because the jury's guilty verdict on the charge of voluntary manslaughter of Lewis was not based "on a deficient understanding of the law governing self-defense." *Anderson*, 2016-NMCA-007, ¶ 16. Fundamental error analysis requires us to analyze the entire record, *Candelaria*, 2019-NMSC-004, ¶ 31, which includes the evidence, arguments, and verdicts on all of the charges that arose from the shootings of Burdex and Lewis. Two critical issues for the jury were (1) whether Defendant acted in defense of Williams when he shot Burdex and (2) whether Defendant acted in self-defense or defense of Williams when he shot Lewis. The jury answered (1) yes and (2) no.

**{17}** The jury could not have reached both of these conclusions based on a mistaken belief that Defendant had a duty to retreat. If the jury's verdicts had hinged on a belief that Defendant had a duty to retreat when he fired at Lewis and Burdex, the jury would have rejected the defense of another theory as to the shooting of Burdex and found Defendant guilty of attempted first-degree murder or aggravated battery as to Burdex. Stated differently, had the jury believed Defendant had a duty to retreat, it could not have accepted his defense-of-another theory as to Burdex. The jury's verdicts allow us to conclude that the jury's guilty verdict on the manslaughter charge did not rest on a mistaken belief that Defendant had a duty to retreat.

**{18}** We were unable to reach such a conclusion in *Anderson* because that case involved the shooting of one person, not contemporaneous shootings of two people, and a single verdict, not multiple verdicts. In *Anderson*, we had no basis for deducing from the single guilty verdict that the absence of a no-retreat instruction played no role in the jury's decision. In Defendant's case, by contrast, the verdicts support such a deduction. Therefore the fundamental error analysis we used in *Anderson* does not apply to Defendant's case.

---

[2] The State contends that under New Mexico law "the issue of retreat exists only when a defendant acts in self-defense against a 'threatened' attack[,]" and that no such threat occurred before Defendant fired the gun at Lewis. In support of its legal argument, the State relies on *State v. Chacon*, 1979-NMCA-154, ¶ 4, 93 N.M. 581, 603 P.2d 320, and a version of UJI 14-5190 that has been updated since the parties filed their briefs. Assuming without deciding that the State has accurately described the law, we do not accept the State's argument because the evidence does not support it. Defendant *did* testify about a threat that immediately preceded the shooting: Lewis pointing a gun at him in the bar area and asking him if he wanted to die. Indeed, that threat was the basis for the self-defense instruction regarding the shooting of Lewis.

**{19}** Because we are not persuaded that allowing Defendant's conviction to stand "would undermine judicial integrity and the legitimacy of the jury's verdict[,]" *Anderson*, 2016-NMCA-007, ¶ 19, we affirm Defendant's manslaughter conviction.

## II. Sufficiency of Evidence for Tampering

**{20}** Defendant argues that the evidence that he gave the gun to Williams is insufficient to support a conviction for tampering with evidence as a principal, rather than someone who aided and abetted Williams. We disagree.

**{21}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (internal quotation marks and citation omitted). We "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). We measure the evidence against the jury instructions the district court gave. *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517.

**{22}** The district court instructed the jury that in order to find Defendant guilty of tampering with evidence, the State had to prove beyond a reasonable doubt that he "placed a firearm" in order to "to prevent [his] apprehension, prosecution or conviction." Defendant argues that the undisputed evidence is that Williams, not Defendant, placed the gun in the garage, which means that Defendant cannot be held liable as a principal. The State's theory at trial was that Defendant either transferred possession of the firearm to Williams—i.e. "placed" it in Williams's possession—so that he could dispose of it or that Defendant disposed of it himself by placing it in a garage. During law enforcement questioning, Defendant stated that he gave the gun to Williams.

**{23}** Even assuming Defendant's description of the evidence is accurate and complete,[3] the act of transferring possession of evidence to another person with the intent to prevent apprehension, prosecution, or conviction suffices for tampering with evidence. *See State v. Garcia*, 2011-NMSC-003, ¶ 14, 149 N.M. 185, 246 P.3d 1057 (holding that evidence of tampering was sufficient where Defendant made multiple efforts to dispose of a gun, which included attempts to transfer possession of the gun). Based on the trial evidence, including Defendant's own statements regarding the gun and the undisputed fact that Defendant fired the shots that killed Lewis, the jury could have reasonably concluded that Defendant transferred possession of the gun to Williams. *See State v. Duran*, 2006-NMSC-035, ¶ 16, 140 N.M. 94, 140 P.3d 515 ("Statements by defendants and witnesses regarding the disposition of evidence may allow a jury to reasonably infer an overt act and intent, as may many other kinds of circumstantial evidence that would tend to prove a defendant acted to tamper with

---

3 The State takes issue with Defendant's description, arguing that the State presented evidence at trial that Defendant placed the gun in the garage. Because we affirm on a different basis, we need not address this argument.

evidence and in so acting intended to thwart a police investigation."). Defendant appears to concede that there was sufficient evidence that he transferred possession. A reasonable jury could infer that Defendant transferred possession because he wanted to avoid being linked to the gun so he would not be arrested, charged, or convicted. *See id.* ¶ 14 ("When there is no other evidence of the specific intent of the defendant to disrupt the police investigation, intent is often inferred from an overt act of the defendant.").

**{24}** An inference that Defendant intended to thwart investigation and prosecution by transferring possession of the gun dovetails with undisputed evidence that Defendant initially denied involvement in the shootings, denied that he possessed a gun in the club, and identified someone named Chris as the shooter. The State also presented evidence that Defendant did not disclose the location of the gun or the fact that he was present when Williams placed the gun in the garage until after Defendant acknowledged that he was the shooter, not Chris. From this evidence the jury could have reasonably concluded that Defendant transferred possession of the gun to Williams because he thought that doing so would decrease the likelihood that he would be arrested for and convicted of criminal offenses for firing the gun at Lewis and Burdex.

**{25}** The evidence suffices to support Defendant's conviction for tampering with evidence as a principal.

### III. The District Court Did Not Abuse Its Discretion By Denying Defendant's Motion for Mistrial

**{26}** Defendant argues that the district court should have granted a mistrial because the prosecutor referred to the shootings of Lewis and Burdex as "crimes" and referred to the shooting of Lewis as "murder" during his cross-examination of Defendant. We disagree.

**{27}** When Defendant moved for a mistrial, he bore the burden of "show[ing] that the error committed constituted legal error, and the error was so substantial as to require a new trial." *State v. Smith*, 2016-NMSC-007, ¶ 69, 367 P.3d 420. We will reverse the denial of a mistrial only if we conclude that the district court abused its discretion. *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516. A court "abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016 (internal quotation marks and citation omitted).

**{28}** We are troubled, as the district court was, by the State's use of the terms "crimes" and "murder" rather than neutral, non-argumentative terms during the presentation of evidence, but we cannot say that the district court abused its discretion by denying the motion for mistrial. We afford significant deference to the district court, and the record does not demonstrate that the comments were prejudicial enough to render the district court's ruling "obviously erroneous, arbitrary, or unwarranted." *Id.*

Defendant failed "to request a cautionary instruction," which "weighs against reversal[.]" *State v. Wittgenstein*, 1995-NMCA-010, ¶ 11, 119 N.M. 565, 893 P.2d 461. More importantly, the verdicts strongly suggest that the prosecutor's comments did not "overwhelm[]" the "sound judgment of the jurors[,]" *id.*, or fix bias "in the minds of the jurors so as to preclude . . . fair and objective verdict[s]," *State v. Gallegos*, 2009-NMSC-017, ¶ 22, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). The jury rejected the prosecutor's characterization of the shooting of Lewis as "murder" by declining to find Defendant guilty of first- and second-degree murder. Similarly, the jury rejected the prosecutor's characterization of the shooting of Burdex as a "crime" when it found Defendant not guilty of attempted first-degree murder, aggravated battery with great bodily harm, and aggravated battery with a deadly weapon. The verdicts give us confidence that the jury's decisions were based on its independent evaluation of the evidence, not on the prosecutor's characterizations of the shootings during the cross-examination of Defendant.

**{29}** The district court did not abuse its discretion by denying Defendant's motion for mistrial.

**CONCLUSION**

**{30}** We affirm.

**{31} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**RICHARD C. BOSSON, Judge Pro Tempore**